**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **AMSURG EC WASHINGTON, INC.,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**MGG GROUP COMPANY, INC.,**<br>**DISTRICT ENDOSCOPY CENTER LLC,**<br>**Michael L. Weinstein, M.D.,**<br>**Dominique Howard, M.D., and**<br>**Ramsey Daher, M.D.**<br><br>**Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **Case No. 1:23-cv-02416** |

---

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF**
**MOTION FOR PRELIMINARY INJUNCTION**

---

**TABLE OF CONTENTS**


I. **INTRODUCTION** ........ 1

II. **BACKGROUND** ........ 2

A. AmSurg and MGG Group Form and Successfully Operate the ECW Partnership.......... 3

B. Defendants Engage in a Scheme to Sabotage ECW and Develop Competing ASCs. ...... 4

C. MGG Group and Its Affiliates Develop Competing ASCs. ........ 5

III. **ARGUMENT & AUTHORITIES** ........ 11

A. AmSurg Is Likely to Succeed on the Merits. ........ 12

1. The Partnership Agreement Is an Enforceable Contract. ........ 12

2. The MGG Group Parties Have Breached the Partnership Agreement. ........ 14

3. The MGG Group Parties' Breach Will Damage AmSurg. ........ 15

B. AmSurg Will Suffer Irreparable Harm if Preliminary Injunctive Relief Is Not Granted. ........ 16

C. The Balance of Equities Favors a Preliminary Injunction. ........ 17

D. The Public Interest Is Served by Interim Injunctive Relief. ........ 18

E. The Court's Preliminary Injunction Can Extend to Non-Parties. ........ 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alliance for the Wild Rockies v. Cottrell*,
632 F.3d 1127 (9th Cir. 2011) ....................11

*Am. Home Shield Corp. v. Specter*,
2019 WL 4935459 (W.D. Tenn. Apr. 25, 2019)....................13, 14, 15, 16

*Amerigas Propane, Inc. v. Crook*,
844 F. Supp. 379 (M.D. Tenn. 1993)....................17, 18

*Amerispec, L.L.C. v. Sutko Real Estate Servs., Inc.*,
2020 WL 3913584 (W.D. Tenn. July 10, 2020) ....................13, 21

*Ballard v. N. Am. Life & Cas.*,
667 S.W.2d 79 (Tenn. Ct. App. 1983) ....................18

*Basicomputer Corp. v. Scott*,
973 F.2d 507 (6th Cir. 1992) ....................16

*Changji Esquel Textile Co. Ltd. v. Raimondo*,
40 F.4th 716 (D.C. Cir. 2022)....................12

*Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*,
598 F.3d 30 (2d Cir. 2010)....................11

*Edwards v. Urosite Partners*,
2017 WL 1192109 (Tenn. Ct. App. Mar. 30, 2017) ....................19

*Hoosier Energy Rural Elec. Coop. v. John Hancock Life Ins. Co.*,
582 F.3d 721 (7th Cir. 2009) ....................11

*Int'l Sec. Mgmt. Group, Inc. v. Sawyer*,
2006 WL 1638537 (M.D. Tenn. June 6, 2006)....................17, 18, 19

*Interstate S. Packaging, LLC v. Korman*,
2021 WL 5161910 (E.D. Tenn. Sept. 5, 2021) ....................12, 15, 16

*S. Glazer's Distribs. of Ohio, LLC v. Great Lakes Brewing Co.*,
860 F.3d 844 (6th Cir. 2017) ....................11

*Scott v. McReynolds*,
255 S.W.2d 401 (Tenn. Ct. App. 1952)....................13

*Sherley v. Sebelius*,
644 F.3d 388 (D.C. Cir. 2011) ....................11

*St. Paul Surplus Lines Ins. Co. v. Bishops Gate Ins. Co.*,
725 S.W.2d 948 (Tenn. Ct. App. 1986) ....................18

*Vantage Tech., LLC v. Cross*,
17 S.W.3d 637 (Tenn. Ct. App. 1999) ....................17, 19

*Winter v. Natural Res. Def. Council, Inc.*,
555 U.S. 7 (2008) ....................11, 12

**Statutes**

D.C. Code Ann. § 44-406 ....................6

**Other Authorities**

22-B District of Columbia Municipal Regulations § 4100.1 ....................6

Federal Rules of Civil Procedure Rule 65(a) ....................1

Federal Rules of Civil Procedure. Rule 65(d)(2) ....................20, 21

Williston on Contracts § 13:18 ....................13

Plaintiff AmSurg EC Washington, Inc. ("AmSurg") and Defendant MGG Group Company, Inc. ("MGG Group") jointly own an ambulatory surgery center company, and their relationship is governed by a Partnership Agreement. That Partnership Agreement contains customary Ownership Restrictions that bar MGG Group and the other Defendants from owning, managing, leasing, developing, or having any financial interest in a competing business in the District of Columbia ***or Chevy Chase, Maryland***. But, MGG Group, its shareholders, and its wholly owned subsidiaries are doing exactly that. They are opening a competing surgery center in Chevy Chase, and they have ***admitted*** in prior correspondence that this conduct violates the Ownership Restrictions. They have proceeded with the admittedly illegal conduct anyway.

Accordingly, pursuant to Rule 65(a) of the Federal Rules of Civil Procedure, AmSurg respectfully moves for a preliminary injunction prohibiting Defendants MGG Group, District Endoscopy Center LLC, Michael L. Weinstein, M.D., Dominique Howard, M.D., Ramsey Daher, M.D., and MGG Group's shareholders and subsidiaries, including without limitation, Friendship Heights Endoscopy ASC LLC (collectively, the "MGG Group Parties") from directly or indirectly owning or engaging in any further efforts to develop, build, license, or operate any ambulatory surgery center within the District of Columbia or Chevy Chase or Bethesda, Maryland, and from any other action that is contrary to their contractual obligations to AmSurg. As set forth herein, the requested relief is necessary and appropriate to maintain the status quo pending final resolution of this litigation and to avoid irreparable harm to AmSurg.

## I. INTRODUCTION

This litigation centers around the Agreement of Limited Partnership of The Endoscopy Center of Washington, D.C., L.P. (the "Partnership Agreement"), which governs the Tennessee limited partnership known as Endoscopy Center of Washington, D.C., L.P. ("ECW"). AmSurg

and MGG Group executed the Partnership Agreement in 1993 to own and operate ECW. ECW owns and operates an ambulatory surgery center ("ASC") located at 2021 K Street NW, Washington, DC, 20006 (the "K Street Center"). Despite earning millions from their partnership with AmSurg over the last 30 years, Defendants recently decided they want more and are no longer willing to abide by the Partnership Agreement. Instead, they are actively and openly developing at least two competing ASCs. One is located in Chevy Chase (just a few miles from the K Street Center), and the second is located in the District ***just one block*** from the K Street Center. This conduct violates the ownership restrictions Defendants agreed to as part of the Partnership Agreement.

All four factors of the applicable test weigh in favor of a preliminary injunction. AmSurg is likely to prevail on the merits in this dispute, as the MGG Group Parties have ***admitted*** they are engaged in ongoing efforts to own, develop, and operate competing ASC businesses in the District and Chevy Chase in direct violation of the Partnership Agreement. The balance of hardships also plainly favors a preliminary injunction. Indeed, an injunction would merely prevent MGG Group and its shareholders from doing what they already agreed not to do, and it would not prevent them from continuing to practice medicine. Conversely, in the absence of a preliminary injunction, AmSurg will suffer irreparable harm to its valuable patient and business relationships. Finally, the public interest weighs in favor of maintaining the status quo and requiring the MGG Group Parties to abide by the contractual obligations MGG Group agreed to as part of the Partnership Agreement.

## II. <u>BACKGROUND</u>

As described in detail in the Complaint (Dkt. No. 1) and AmSurg's briefing in opposition to Defendants' motion to dismiss (Dkt. Nos. 11, 13-1), AmSurg alleges Defendants have engaged in willful, wrongful conduct aimed at forcing the closure of ECW's K Street Center and taking

ECW's business for themselves. A complete recitation of Defendants' misconduct is not necessary here because the grounds justifying injunctive relief are straightforward and incontrovertible. Accordingly, AmSurg summarizes only those facts demonstrating that Defendants have breached the Ownership Restrictions contained in the Partnership Agreement.

### A. AmSurg and MGG Group Form and Successfully Operate the ECW Partnership.

In May 1993, AmSurg and MGG Group entered into the Partnership Agreement to create ECW, which operates the K Street Center. Non-emergency, outpatient gastrointestinal procedures – such as colonoscopies – are performed at the K Street Center. (Declaration of Elizabeth Wylie ("Wylie Decl.") ¶¶ 6-7; *see also*, Partnership Agreement, attached as Exhibit A to Wylie Decl.)

AmSurg is a subsidiary of AmSurg Holdings LLC, which specializes in developing and managing ASCs in partnerships with physicians. (Wylie Decl. ¶ 8.) MGG Group is a Maryland corporation whose shareholders are several physicians who practice medicine with a large gastroenterology physician practice called Capital Digestive Care. (Wylie Decl. ¶ 9.) Defendants Michael L. Weinstein, M.D., Dominique Howard, M.D., and Ramsey Daher, M.D., are MGG Group shareholders. (Phillips Decl. ¶ 10, Ex. E.)

Pursuant to the Partnership Agreement, as amended, AmSurg owns 51% of ECW and MGG Group owns 49%. (Partnership Agreement at Second Amendment, Annex A.) The parties split the profits accordingly. (*Id.*) As part of the Partnership Agreement, MGG Group and its shareholders agreed to certain ownership and investment restrictions that limit their ability to own, develop, or participate in a business or entity competing with ECW and its ASC (the "Ownership Restrictions"). Specifically, the Partnership Agreement provides:

> ***The Limited Partner shall not*** be a consultant to, or have ***any direct or indirect ownership interest*** in, or manage, lease, develop, or otherwise have any financial interest in, or receive compensation from any business or entity competing with [ECW] within the ***District of Columbia, or Chevy Chase or Bethesda, Maryland***,

> until the later of (i) five years from the date of this Agreement, or (ii) one year after the Limited Partner ceases to be a Partner.
>
> ***No shareholder of the Limited Partner*** shall have ***any direct or indirect ownership interest*** in, or manage, lease, develop, or otherwise have any financial interest in, or receive compensation from any business or entity competing with [ECW] within the ***District of Columbia, or Chevy Chase or Bethesda, Maryland***, until the later of (i) five (5) years from the date of this Agreement, or (ii) one (1) year after the Limited Partner ceases to be a Partner.

(*Id.* § 9.3 (emphasis added).) Thus, the Ownership Restrictions cover not only the District of Columbia, but Chevy Chase, Maryland as well. Section 9.3 also provides that "[p]rior to issuing stock to a new shareholder, [MGG Group] shall require such new shareholder to agree in writing to the provisions of this Section 9.3." (*Id.*)

To facilitate their management, operation and control of ECW, MGG Group and its shareholders received the confidential business information of both AmSurg and ECW. For example, MGG Group and ECW's four-member Advisory Board, half of which is appointed by MGG Group, received monthly operating reports on ECW's financial performance. (*Id.* at §§ 10.1, 15.2, Second Amendment; Wylie Decl. ¶ 14.) Accordingly, the Partnership Agreement requires the "Limited Partner and each of its physician shareholders" to maintain the confidentiality of confidential information related to ECW's business, including pro forma financial information, information concerning AmSurg and its business strategy, and any documents to be utilized in connection with the ownership and operation of the K Street Center. (Partnership Agreement, Second Amendment ¶ 3.)

### B. <u>Defendants Engage in a Scheme to Sabotage ECW and Develop Competing ASCs.</u>

ECW has been very successful over the years. In 2021 alone, it generated $1.23 million in EBITDA. (Wylie Decl. ¶ 16.) In 2022 and 2023, ECW generated $2.75 million in EBITDA. (*Id.* at ¶¶ 15, 21.) As noted above, MGG Group and its shareholders receive 49% of ECW's net earnings.

Despite ECW's success, Defendants recently have engaged in willful, wrongful conduct aimed at sabotaging ECW's business in order to take all of that business for themselves. As recounted more fully in the Complaint and the opposition to Defendants' motion to dismiss the complaint, MGG Group sought to exploit its representation on the Advisory Board that governs ECW to force the closure of the K Street Center while, at the same time, they developed competing ASCs in the District and Chevy Chase without AmSurg. (Dkt. Nos. 1, 11, 13-1.)

In fact, Defendants' efforts to sabotage ECW are ongoing. After briefing on Defendants' motion to dismiss was completed in this case, MGG Group filed a lawsuit in Tennessee Chancery Court against AmSurg and ECW requesting (1) a declaration that AmSurg had breached the Partnership Agreement; (2) indemnification for litigation expenses; and (3) judicial dissolution of ECW. (Phillips Decl. ¶ 12, Ex. G.) AmSurg and ECW opposed that effort, in part because it was a clear effort to bypass this earlier-filed litigation by preemptively dissolving the entity at the heart of the dispute. (Phillips Decl. ¶ 13, Ex. H.) The Chancery Court agreed with AmSurg and ECW, dismissed certain claims, and then stayed the Tennessee case indefinitely to allow this litigation to proceed to resolution. (Phillips Decl. ¶ 14, Ex. I.)

Despite Defendants' efforts to undermine ECW, ECW continues to provide healthcare services to patients and generate profits for its partners. In 2022 and 2023, an average of 5,873 procedures were performed at the K Street Center. In the first two months of 2024, 1,053 procedures were performed there. (Wylie Decl. ¶ 20.) Drs. Daher and Howard performed at least 33 procedures there as recently as the week of April 1, 2024. (*Id.* at ¶ 18.)

### C. **<u>MGG Group and Its Affiliates Develop Competing ASCs.</u>**

In 2022, as part of its scheme to shutter the K Street Center, MGG Group and its shareholders also began developing a competing ASC located at 2000 Pennsylvania Avenue NW (the "2000 Pennsylvania Location") – just one block from ECW's existing K Street Center. (Wylie

Decl. ¶¶ 23-27.) To further this scheme, Defendants formed District Endoscopy Center LLC ("District Endoscopy"), which is wholly owned by MGG Group. (Phillips Decl. ¶ 9, Ex. D.) The build-out of the competing ASC at the 2000 Pennsylvania Location is presently on hold pending issuance of a certificate of need by the District. (Phillips Decl. ¶ 11, Ex. F at 69:19-70:12.) *See* D.C. Code Ann. § 44-406(a); 22-B DCMR § 4100.1.[1] AmSurg had thought it prudent to wait for the conclusion of the SHPDA regulatory process before seeking any injunction. However, Defendants' active development of a separate ASC in Chevy Chase in breach of the Ownership Restrictions has required AmSurg to take action now.

At the same time they were developing a competing ASC at the 2000 Pennsylvania location, the MGG Group Parties also developed a competing ASC in Chevy Chase. (Wylie Decl. ¶¶ 28-37; *see also* Complaint ¶¶ 5, 74, 79, 114 (Dkt. No. 1).) Again, the Defendants are doing so without AmSurg, and in clear violation of the Partnership Agreement. (Wylie Decl. ¶ 28.) On January 18, 2023, an entity called Friendship Heights Endoscopy ASC LLC ("Friendship Endoscopy") submitted a letter to the Maryland Health Care Commission requesting confirmation that a certificate of need would not be required for a proposed new ASC to be located at 5550 Friendship Blvd., Chevy Chase, MD 20815 ("New Chevy Chase ASC"). (Phillips Decl. ¶ 15, Ex. J.) The New Chevy Chase ASC will provide the same types of procedures performed at ECW's K Street Center. (Phillips Decl. Ex. J at 6.) The letter explains that "[t]he proposed ASC is owned

[1] On June 2, 2023, District Endoscopy submitted a letter to The State Health Planning and Development Agency ("SHPDA") of the D.C. Department of Health stating it intended to apply for a certificate of need to establish an ASC at the 2000 Pennsylvania Location. (Phillips Decl. ¶ 6, Ex. A.) District Endoscopy then filed its application with SHPDA on November 6, 2023. (Phillips Decl. ¶ 7, Ex. B.) In the application, District Endoscopy claims its proposed ASC is needed due to the impending closure of the K Street Center and dissolution of ECW. (Phillips Decl. Ex. B at 2.) It is unclear when SHPDA will act on District Endoscopy's certificate of need application.

by MGG Holdings, LLC" which "is owned by MGG Group, Inc., a Maryland corporation."[2] (*Id.* at 3.) The letter identifies MGG Group's shareholders, including Drs. Weinstein, Howard, and Daher. (*Id.* at 3-4.)[3]

During 2023, the MGG Group Parties proceeded with developing the New Chevy Chase ASC. In a June 29, 2023 Facebook post, copied below, one of the project's contractors wrote "The finishing touches are taking place at Capital Digestive Care's Friendship Heights Endoscopy Center!" (Phillips Decl. ¶ 17, Ex. L.)




---

[2] The letter erroneously refers to MGG Group as "MGG Group, Inc." There is no Maryland business registered under the name "MGG Group, Inc." (Wylie Decl. ¶ 30.) The letter also falsely states that MGG Group does not have an interest or other economic relationship with any other ambulatory surgical facility. (Phillips Decl. Ex. J at 4.)

[3] Based upon representations made in the letter, the Maryland Health Care Commission concluded a certificate of need was not required under Maryland law to open the New Chevy Chase ASC. (Phillips Decl. ¶ 16, Ex. K at 7.) The Maryland regulators were neither aware of nor considered the Ownership Restrictions in reaching that conclusion.

In late 2023, the New Chevy Chase ASC solicited applicants for various positions at the ASC. (Phillips Decl. ¶ 18, Ex. M.)

Then, abruptly, on March 29, 2024, AmSurg learned that the New Chevy Chase ASC would open for business imminently. MGG Group took a number of steps on that date and during the following week in connection with its efforts to sabotage *another* ASC the parties jointly own – The Chevy Chase ASC LLC ("CCA"). CCA is located at 5530 Wisconsin Avenue, Chevy Chase, MD 20815, and the MGG Group Parties' opening of the New Chevy Chase ASC is an attempt to shutter *that* jointly owned ASC as well.[4] On March 29, MGG Group's President, Dr. Jonathan Koff, informed CCA's anesthesia provider that the CCA ASC was permanently closed and that no further procedures would be performed there. (Wylie Decl. ¶ 33.) On that same day, Defendant Dr. Weinstein informed Dr. Ira Shocket, a physician who performs procedures at CCA, that he could not continue to do so. (*Id.* at ¶ 34.) Then, during the week of April 1, 2024, MGG Group representatives informed CCA staff members that their employment at CCA was ending and made offers of employment at the New Chevy Chase ASC to certain staff members. (*Id.* at ¶ 35.) To date, at least two key staff members at CCA – a nurse and a surgical technician – have indicated they are resigning from CCA to work at the New Chevy Chase ASC. (*Id.*) As intended, MGG Group's conduct significantly disrupted CCA's operations and patients' interests, as CCA had patients scheduled for procedures through June 2024. (*Id.* at ¶ 36.) Based on all of the circumstances described above, it appears the New Chevy Chase ASC is open for business or will open any day now. (*Id.* at ¶ 37.)

[4] In their efforts to sabotage CCA and take its business for themselves, the MGG Group Parties engaged in a similar course of conduct as that alleged in the Complaint here. (*See* Wylie Decl. ¶ 32.) The parties' disputes relating to their obligations under CCA's Operating Agreement are subject to an arbitration clause and are not at issue in this case.

The location of the New Chevy Chase ASC violates the Ownership Restrictions in the Partnership Agreement, which prohibits ownership or investment in a competing ASC in Chevy Chase. In fact, MGG Group has previously acknowledged that the Ownership Restrictions bar the exact conduct in which it, its shareholders, and its subsidiaries have engaged with respect to the New Chevy Chase Center. When CCA was initially formed in 1996, MGG Group and AmSurg both executed a narrow waiver of the ECW Partnership Agreement's Ownership Restrictions to allow for the development of that facility. (Phillips Decl. ¶ 19, Ex. N.) The waiver acknowledges that an ownership interest in CCA by MGG Group or its shareholders would violate the Ownership Restrictions:

> The undersigned are each parties to that certain Agreement of Limited Partnership of The Endoscopy Center of Washington, D.C., L.P. (the "Partnership Agreement"), effective as of May 28, 1993 (the "Partnership"). Section 9.3 of the Partnership Agreement sets forth certain restrictions which provide that neither the undersigned nor any affiliate will compete with the Partnership within the District of Columbia, Chevy Chase or Bethesda, Maryland. Certain affiliates of each of the undersigned desire to become a member in The Chevy Chase ASC, LLC (the "New LLC"), which will own and operate an ambulatory surgery center (the "New Center") that would violate the provisions of Section 9.3 of the Partnership Agreement absent the consent of each of the undersigned. Accordingly, each of the undersigned hereby waives compliance with the provisions that are set forth in Section 9.3 of the Partnership Agreement with respect to the New LLC and the New Center.
>
> The consents and waivers set forth above shall be strictly limited to the New LLC and the New Center, and shall not be deemed or construed to amend or affect the non-compete provisions set forth in the Partnership Agreement in any other respect or to apply to any other circumstances. The provisions of this Limited Waiver shall not be deemed to constitute a course of dealing between the parties.

(Phillips Decl. Ex. N.)

In a September 30, 2022, letter from MGG Group's counsel to AmSurg, MGG Group reaffirmed that the development of a new ASC in Chevy Chase violates the Ownership Restrictions:

> On November 25, 1996, AmSurg and MGG acquired an ownership interest, though separate and distinct entities, in The Chevy Chase ASC, LLC ("Competing Entity"), an entity created to operate a competing ASC in Chevy Chase, Maryland. ***On its face, when MGG acquired ownership in [CCA] in 1996, it violated the terms of Section 9.3 of the Partnership Agreement, which purports to prohibit the Limited Partner (and certain physician-shareholders) from having an financial interest in a competing ASC within, among other places, Chevy Chase, Maryland***.

(Phillips Decl. Ex. O at 3 (emphasis added).)

Those Ownership Restrictions are reasonable in light of the short distance between ECW's K Street Center and Chevy Chase. By car, MGG Group's New Chevy Chase ASC is located only 5.4 miles from the K Street Center:




(Wylie Decl. ¶ 38.)

The Ownership Restrictions also are reasonable in relation to the patients who receive services at ECW. The ZIP Code for Chevy Chase is 20815, and the ZIP Codes of adjacent neighborhoods include 20012, 20015, 20016, 20814, 20816, 20817, 20895, and 20910. (*Id.* at ¶ 40.) According to information provided by District Endoscopy in its application for a certificate

of need, 1,138 patients from these ZIP Codes have received services at ECW in the past three years. (Phillips Decl. ¶ 8, Ex. C.)

Based on this record, the MGG Group Parties' development and ownership of the New Chevy Chase ASC, as well as their development and ownership of a new ASC at the 2000 Pennsylvania Location, will cause irreparable harm to ECW's business and patient relationships and AmSurg's interests and should be enjoined. (Wylie Decl. ¶¶ 41-43.)

## III. ARGUMENT & AUTHORITIES

Federal courts consider four factors in determining whether to grant a motion for a preliminary injunction: (1) whether plaintiff is likely to succeed on the merits; (2) whether plaintiff is likely to suffer irreparable harm; (3) whether the balance of equities tips in the plaintiff's favor; and (4) whether the injunction serves the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (citing *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008); *Amoco Prod. Co. v. Gambell*, 480 U.S. 531, 542 (1987); *Winberger v. Romero-Barcelo*, 456 U.S. 305, 311-12 (1982)).

Courts in the D.C. Circuit have historically applied a "sliding scale" approach under which "a strong showing on one factor could make up for a weaker showing on another." *Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011) (citing *Davenport v. Int'l Bhd. of Teamsters*, 166 F.3d 356, 360-61 (D.C. Cir. 1999); *Winter*, 555 U.S. at 51 (Ginsberg, J., dissenting)). Justice Ginsberg's dissent in *Winter* suggests that the sliding-scale approach remains viable, and several Courts of Appeal have so held in the years since the *Winter* decision. *See, e.g.*, *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-35 (9th Cir. 2011); *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35-38 (2d Cir. 2010); *Hoosier Energy Rural Elec. Coop. v. John Hancock Life Ins. Co.*, 582 F.3d 721, 725 (7th Cir. 2009); *see also S. Glazer's Distribs. of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 849 (6th Cir. 2017)

("We have often cautioned that these are factors to be balanced, not prerequisites to be met." (citing *Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007))). The D.C. Circuit, however, has not expressly confirmed whether the sliding-scale approach survives *Winter*. *See, e.g.*, *Changji Esquel Textile Co. Ltd. v. Raimondo*, 40 F.4th 716, 726 (D.C. Cir. 2022) ("[W]e have noted this tension but reserved the question whether the sliding-scale approach remains valid." (citing *Archdiocese of Wash. v. WMATA*, 897 F.3d 314, 334 (D.C. Cir. 2018)).

Regardless of whether the Court applies the "sliding-scale" approach, in this case, all four factors weigh in favor of granting a preliminary injunction.

**A. <u>AmSurg Is Likely to Succeed on the Merits.</u>**

For purposes of this Motion, AmSurg relies primarily upon its likelihood of success on Count I for breach of contract, although AmSurg submits it is likely to succeed on all claims asserted in the Complaint. To prove a breach of contract claim in Tennessee, a plaintiff must show "(1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of the contract."[5] *Interstate S. Packaging, LLC v. Korman*, 2021 WL 5161910, at *10 (E.D. Tenn. Sept. 5, 2021) (quoting *C&W Asset Acquisition, LLC v. Oggs*, 230 S.W.3d 671, 676-77 (Tenn. Ct. App. 2007)). Here, AmSurg is likely to succeed on all three elements.

***1. <u>The Partnership Agreement Is an Enforceable Contract.</u>***

The Partnership Agreement, including the Ownership Restrictions in Section 9.3, is an enforceable agreement. "[W]hile non-compete agreements are disfavored in Tennessee as a

[5] Under Section 20.5 of the Partnership Agreement, Tennessee law governs AmSurg's breach of contract claim. (Partnership Agreement § 20.5.)

restraint on trade, Tennessee courts will uphold an agreement that protects a 'legitimate business interest' and is 'reasonable under the particular circumstances.'" *Amerispec, L.L.C. v. Sutko Real Estate Servs., Inc.*, 2020 WL 3913584, at *5 (W.D. Tenn. July 10, 2020) (quoting *Am. Home Shield Corp. v. Ozur*, 2016 WL 8738243, at *3 (W.D. Tenn. Sept. 13, 2016)). Tennessee courts have held that "[a] partnership agreement may validly provide that in event of a partner's withdrawal from the firm, he shall not engage in the business in which the partnership is engaged." *Scott v. McReynolds*, 255 S.W.2d 401, 404 (Tenn. Ct. App. 1952) (quoting 36 Am. Jur. § 59); *see also* Williston on Contracts § 13:18 ("As a general principle, the contract of a partner not to compete with the partnership either directly or indirectly is not opposed to public policy; but such an agreement must be ancillary to the relation or contract of partnership or to a contract by which a partner disposes of his interest." (footnotes omitted)).

Here, AmSurg has a legitimate business interest in protecting the business relationships, patient relationships, and confidential and proprietary business information that the MGG Group Parties have accessed over the past 30 years as AmSurg's partners in ECW. (*See* Wylie Decl. ¶¶ 41-43.) The MGG Group Parties would have an unfair competitive advantage if permitted to use this information and knowhow in connection with their new competing ASCs, and courts in Tennessee have held that protecting against unfair competition is a legitimate business interest. *Am. Home Shield Corp. v. Specter*, 2019 WL 4935459, at *4 (W.D. Tenn. Apr. 25, 2019) (citations omitted). Similarly, the Ownership Restrictions are reasonable under the particular circumstances, as they are confined to a limited geographic area that includes the District of Columbia and Chevy Chase, Maryland. (*See* Partnership Agreement § 9.3.) Also, they are temporally limited to one year after MGG Group ceases to be a partner in ECW or one year after an MGG Group shareholder

ceases to be a shareholder. (*Id.*) Accordingly, the Partnership Agreement, including Section 9.3 therein, is a valid and enforceable contract.

### 2. *The MGG Group Parties Have Breached the Partnership Agreement.*

Second, the MGG Group Parties have clearly breached the Ownership Restrictions. Indeed, the MGG Group Parties have ***admitted*** that they have developed and have an ownership interest in Friendship Endoscopy and its New Chevy Chase ASC, and that they intend to perform the same type of endoscopy procedures now performed at ECW's K Street Center.

Friendship Endoscopy requested in writing that the Maryland Health Care Commission confirm a certificate of need would not be required for the New Chevy Chase ASC. (Phillips Decl. Ex. J at 1.) Friendship Endoscopy confirmed that the New Chevy Chase ASC will provide the same kind of GI endoscopy procedures that are performed at ECW's K Street Center. (*See id.* at 6.) Friendship Endoscopy confirmed that the proposed ASC is wholly owned by MGG Holdings, LLC, which is wholly owned by MGG Group, which, in turn, is owned by a group of individual shareholders that includes Drs. Weinstein, Howard, and Daher. (*Id.* at 3-4.)[6] And, on or about March 29, 2024, AmSurg representatives learned that MGG Group's New Chevy Chase ASC was open or would be opening imminently.[7] (Wylie Decl. ¶¶ 33-37.)

This conduct violates Section 9.3 of the Partnership Agreement, which states that MGG Group and its shareholders shall not "have any direct or indirect ownership interest in, or manage,

---

[6] Again, these ownership interests and relationships are confirmed by the organizational chart District Endoscopy submitted to SHPDA on November 6, 2023 with its certificate of need application. (Phillips Decl. Ex. E.)

[7] The MGG Group Parties likewise have admitted they are developing a new ASC at the 2000 Pennsylvania Location. On November 6, 2023, District Endoscopy, which is wholly owned by MGG Group, applied to SHPDA for a certificate of need to operate a new ASC at the 2000 Pennsylvania Location. (Phillips Decl. Exs. B, D, E.) In the application, District Endoscopy concedes that the ASC planned for the 2000 Pennsylvania location is intended to "replace" ECW's K Street Center. (Phillips Decl. Ex. B at 2, 12.)

lease, develop, or otherwise have any financial interest in or receive compensation from any business or entity competing with [ECW] within the District of Columbia, ***or Chevy Chase*** …, ***Maryland*** until ... one (1) year after [MGG Group] ceases to be a Partner." (Partnership Agreement § 9.3 (emphasis added).) As of the date of this filing, MGG Group remains a limited partner of ECW, and the restrictions in Section 9.3 are in full effect. (*Id.*; Wylie Decl. ¶ 9.) There is no argument that the MGG Group Parties' development and ownership of competing ASCs within the area specifically identified by the Ownership Restrictions does not constitute a breach of those restrictions.

### *3. The MGG Group Parties' Breach Will Damage AmSurg.*

Third, AmSurg will be damaged by the MGG Group Parties' breach. Courts in Tennessee have recognized that proof of damages can be challenging in a restrictive covenant case, and, therefore, injunctive relief is the preferable remedy. *Korman*, 2021 WL 5161910, at *14 (quoting *Gibbons v. Bennett*, 2021 WL 423806, at *15 (Tenn. Ct. App. Feb. 8, 2021); and citing *Total Car Franchising Corp. v. L & S Paint Works, Inc.*, 981 F. Supp. 1079, 1082-83 (M.D. Tenn. 1997)). "Moreover, the loss of customer goodwill and fair competition can amount to irreparable harm." *Id.* (citing *Basicomputer Corp. v. Scott*, 973 F.2d 507, 512 (6th Cir. 1992)). Indeed, courts have repeatedly held that injunctive relief is appropriate where a plaintiff alleges harm to goodwill and customer relationships, as the nature of the plaintiff's loss would make damages difficult to calculate. *Specter*, 2019 WL 4935459, at *6 (citing *Basicomputer Corp.*, 973 F.2d at 511). Here, AmSurg will suffer harm to its business relationships, patient relationships, and financial interests. (Wylie Decl. ¶¶ 41-43.) For example, the MGG Group Parties will undoubtedly make use of AmSurg's confidential and proprietary processes and procedures to divert customers away from ECW's K Street Center and to the MGG Group Parties' competing New Chevy Chase ASC (and, if it is approved by SHPDA, the proposed ASC at the 2000 Pennsylvania Location). (*See id.* at ¶

42.) AmSurg, in turn, will lose its share of the profits from those procedures and will experience a diminution of the value of its share of ECW. A preliminary injunction is necessary and appropriate to protect against that harm. *Korman*, 2021 WL 51671910, at *14-15; *Specter*, 2019 WL 4935459, at *6.

AmSurg, therefore, is likely to succeed on the merits of Count I for breach of contract.

### B. <u>AmSurg Will Suffer Irreparable Harm if Preliminary Injunctive Relief Is Not Granted.</u>

A preliminary injunction to enforce a restrictive covenant is appropriate where "the nature of the plaintiff's loss would make damages difficult to calculate" and where, in addition to direct monetary harm, the plaintiff demonstrates competitive injury and loss of customer goodwill that cannot be quantified. *Basicomputer Corp.*, 973 F.2d at 511-12; *Specter*, 2019 WL 4935459, at *6. Here, the MGG Group Parties have the ability and information to damage AmSurg's business and patient relationships. Moreover, the inevitable use and disclosure of AmSurg's confidential and proprietary business information, for the benefit of their competing ASCs, will give the MGG Group Parties an unfair competitive advantage and cause serious economic harm to AmSurg that is almost impossible to fully quantify.

Using AmSurg's confidential and proprietary processes and procedures, the MGG Group Parties will undoubtedly divert patients from ECW's existing K Street Center to their New Chevy Chase ASC. As explained in District Endoscopy's application for a certificate of need, a large volume of patients served at the K Street Center reside in Chevy Chase and adjacent areas. (Wylie Decl. ¶ 40, Phillips Decl. Ex. C.)[8]

---

[8] With respect to MGG Group's proposed ASC at the 2000 Pennsylvania Location, MGG Group has made it clear that its affiliated physicians will stop performing procedures at ECW's K Street Center if and when the new ASC is completed. Defendants' counsel has admitted in correspondence that the MGG Group Parties will ensure "continuity of care for their patients" by scheduling future procedures at their competing ASC. (Phillips Decl. ¶ 22, Ex. Q at 3.) And, as noted, District Endoscopy's certificate of need application

Given that ECW generated an average of $1.33 million in EBITDA for AmSurg, MGG Group, and MGG Group's shareholders in 2021, 2022, and 2023, the harm to AmSurg is substantial, albeit difficult to calculate precisely under the circumstances. (*See* Wylie Decl. ¶¶ 15, 16, 21.) Indeed, it is impossible to repair the competitive harm and loss of customer goodwill that AmSurg will experience because of the MGG Group Parties' unfair competition, making injunctive relief vital. *See Amerigas Propane, Inc. v. Crook*, 844 F. Supp. 379, 390 (M.D. Tenn. 1993); *see also Int'l Sec. Mgmt. Group, Inc. v. Sawyer*, 2006 WL 1638537, at *8 (M.D. Tenn. June 6, 2006) (explaining "the loss of fair competition that results from the breach of a non-competition covenant is likely to constitute irreparable harm").

**C. The Balance of Equities Favors a Preliminary Injunction.**

The issuance of a preliminary injunction would not result in substantial harm to others. The MGG Group Parties themselves would not suffer substantial harm because the injunction only would prevent them from doing that which they have already agreed not to do by virtue of the Partnership Agreement. *See Vantage Tech., LLC v. Cross*, 17 S.W.3d 637, 647 (Tenn. Ct. App. 1999) ("If the covenant is not enforced, [the employer] stands to lose its ... investment in the development of customer relationships .... If the covenant is enforced, [the employee] merely loses that which does not belong to him."). Furthermore, a preliminary injunction will not prevent the MGG Group Parties from treating patients. Indeed, there are other locations where MGG Group's physician shareholders can perform their procedures in and around the District and Chevy Chase, including the K Street Center. The K Street Center remains fully operational. (Wylie Decl. ¶ 18.) Indeed, MGG Group-affiliated physicians, including Drs. Howard and Daher, performed

---

makes clear that the proposed ASC is intended to "replace the volume of endoscopic procedures [Capital Digestive Care] physicians currently perform at ECW." (Phillips Decl. Ex. B at 12.)

procedures there throughout the week of April 1, 2024. (*Id.*) Therefore, there is no reason physicians cannot continue to perform procedures at the K Street Center while the injunction remains in effect. Moreover, the Ownership Restrictions do not place unfair or undue restriction on the MGG Group Parties, as AmSurg agreed to be bound by the ***exact same restrictions***. (Partnership Agreement § 9.3.)

A balancing of hardships between the parties tips decidedly in favor of AmSurg and strongly supports an award of the preliminary injunctive relief sought. *See Sawyer*, 2006 WL 1638537, at *10 ("In balancing the risk of harm ... the risk of harm to Defendants resulting from the relatively limited nature of an injunction barring Defendants from doing what they have already agreed not to do, is slight.") As previously stated, in the absence of a preliminary injunction, AmSurg's patient and business relationships will be damaged, and the economic value and competitive advantage AmSurg has derived from accumulating advantageous, confidential business information at ECW will be lost forever. (Wylie Decl. ¶¶ 41-43.) The requested injunctive relief is vital to AmSurg's ability to enforce the protections the parties bargained for in the Partnership Agreement and poses no risk of substantial harm to the MGG Group Parties.

**D. <u>The Public Interest Is Served by Interim Injunctive Relief.</u>**

Granting the injunctive relief sought promotes the public interest. Tennessee has a strong public policy in favor of upholding contracts as agreed upon by the parties. *See St. Paul Surplus Lines Ins. Co. v. Bishops Gate Ins. Co.*, 725 S.W.2d 948, 951 (Tenn. Ct. App. 1986); *Ballard v. N. Am. Life & Cas.*, 667 S.W.2d 79, 82-83 (Tenn. Ct. App. 1983). The MGG Group Parties should not be permitted to dishonor and disavow their contractual obligations, as "[p]reserving the sanctity of the [parties'] contractual obligations promotes stability and certainty in business and employment relationships," thereby serving the public interest. *See Crook*, 844 F. Supp. at 390.

Moreover, issuance of the requested injunction will serve the public interest by preventing businesses and individuals from the misappropriation of confidential information and from unfair competition in the marketplace. *See Sawyer*, 2006 WL 1638537, at *10 ("Companies ... have a legitimate public interest in keeping certain information confidential and in maintaining their clientele, and Tennessee has recognized that businesses have the right to protect their confidential and trade secret information as well as their business good will."); *see also Cross*, 17 S.W.3d at 647 (noting public interest in prohibiting an employee from unfairly using the benefits and information bestowed upon the employee by the employer).

Importantly, the injunction will have no impact on any physician's ability to practice medicine or to perform procedures for patients. The injunction merely restricts the MGG Group Parties' ability to develop, build, license, own, or operate a competing ASC in a limited geographic area for one year after MGG Group ceases to be a partner in ECW. The physicians can continue all aspects of their clinical practices, including performing procedures at ECW's K Street Center or at any other medical facility they do not own in violation of the Ownership Restrictions. Tennessee courts have consistently held that restrictive covenants relating to a physician's participation in an ancillary business, such as real estate investment, are enforceable and do not violate public policy. *Edwards v. Urosite Partners*, 2017 WL 1192109, at *9 (Tenn. Ct. App. Mar. 30, 2017) ("The Separation Agreement does not limit Dr. Edwards' ability to work [as a physician]. ... Instead, he is simply precluded from continuing to be an investor in a real estate partnership."). Finally, the fact that the physicians have continued to use ECW's K Street Center as recently as the week of April 1st conclusively demonstrates that an injunction will not impair patient care in any way.

**E. The Court's Preliminary Injunction Can Extend to Non-Parties.**

As discussed herein, AmSurg is requesting a preliminary injunction that restricts all of the MGG Group Parties, including those who are not parties to the Partnership Agreement or to this litigation, from further activities that violate the Ownership Restrictions. This scope of injunction is expressly permitted under the Federal Rules of Civil Procedure. Rule 65(d)(2) gives the Court authority to issue an injunction that binds "(A) the parties; (B) the parties' officers, agents, servants, employees, and attorneys; and (C) other persons who are in active concert or participation with anyone described in [(A) or (B)]." Fed. R. Civ. P. 65(d)(2). MGG Group, District Endoscopy, and Drs. Weinstein, Howard, and Daher are all "parties" within the scope of subsection (A). Additionally, Drs. Weinstein and Howard are shareholders and directors of MGG Group, and Dr. Daher is an MGG Group shareholder and an officer and governor of District Endoscopy within the scope of subsection (B). (Phillips Decl. ¶ 24, Ex. S at ¶ 5 ("I am a director of MGG"); Phillips Decl. ¶ 25, Ex. T at Article VIII.) Other MGG Group shareholders who are not presently defendants in this action serve as MGG Group officers, including Dr. Koff (President), Dr. Eric Pollack (Treasurer), and Dr. Kevin Collier (Secretary). (Phillips Decl. Ex. J at 4.)

Moreover, the various regulatory filings made by the subsidiaries MGG Group and its shareholders have created to wrongfully develop their competing ASCs identify additional persons and entities who are participating in MGG Group's breach of the Partnership Agreement. For the New Chevy Chase ASC, these include MGG Group's Friendship Endoscopy subsidiary, as well as Friendship Endoscopy's Medical Director, Dr. Mohammed Amir Ali, and its Quality Assurance & Performance Improvement Director, Dr. Erica Cohen, both of whom are also MGG Group shareholders.[9]

[9] For the proposed new ASC at the 2000 Pennsylvania Location, Defendants' counsel has admitted that MGG Group and "certain physicians who were not MGG shareholders," and/or others who are

Accordingly, the Court has the authority under Rule 65(d)(2) to enter an injunction against all of the MGG Group Parties who are in active concert or participation with Defendants in this litigation. *See, e.g.*, *Amerispec*, 2020 WL 3913584, at *7-12.

**CONCLUSION**

MGG Group and its shareholders must be held to their obligations under the Partnership Agreement. AmSurg has demonstrated (1) a likelihood of success on the merits; (2) irreparable harm in the absence of an injunction; (3) the balancing of the equities tips in favor of an injunction; and (4) the public interest will be served by an injunction. Accordingly, AmSurg respectfully requests that this Court grant a preliminary injunction prohibiting the MGG Group Parties from directly or indirectly owning or engaging in any further efforts to develop, build, license, or operate any ASC within the District of Columbia or Chevy Chase or Bethesda, Maryland, and from any other action that is contrary to their contractual obligations to AmSurg.

**DATED** this 8th day of April, 2024.

---

"affiliated with [Defendants]" are in active concert with one another to open the competing ASC. (Phillips Decl. ¶ 21, Ex. P at 1; ¶ 23, Ex. R at 2.) Further, District Endoscopy has identified Korth Construction and Eckert Wordell as the contractors who are designing and building the proposed ASC. (Phillips Decl. Ex. B.)

Respectfully submitted,

*/s/ Brian R. Iverson*

Brian R. Iverson (D.C. Bar No. 1012843)
**BASS, BERRY & SIMS PLC**
1201 Pennsylvania Avenue NW, Suite 300
Washington, D.C. 20004
(202) 827-2950
biverson@bassberry.com

W. Brantley Phillips, Jr. (admitted *pro hac vice*)
Matthew J. Sinback (admitted *pro hac vice*)
Sara K. Morgan (admitted *pro hac vice*)
**BASS, BERRY & SIMS PLC**
150 Third Avenue South, Suite 2800
Nashville, Tennessee 37201
(615) 742-6200
bphillips@bassberry.com
msinback@bassberry.com
sara.morgan@bassberry.com

*Counsel for AmSurg EC Washington, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and exact copy of the foregoing has been served on the following counsel via the Court's CM/ECF email notification system and to all counsel who have entered an appearance:

Laurin H. Mills
Brian P. Donnelly
**WERTHER & MILLS LLC**
800 Connecticut Avenue, Suite 300
Washington, DC 20006
(202) 599-5006
laurin@werthermills.com
bdonnelly@werthermills.com

*/s/ Brian R. Iverson*