**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| AMSURG EC WASHINGTON, INC.,<br><br>Plaintiff,<br><br>v.<br><br>MGG GROUP COMPANY, INC., et al.,<br><br>Defendants. | ) | Civil Action No. 23-2416 (RBW) |

**ORDER**

On August 18, 2023, the plaintiff—AmSurg EC Washington, Inc.—brought this civil action against the defendants—MGG Group Company, Inc. ("MGG Group"), District Endoscopy Center, LLC, Michael L. Weinstein, M.D., Dominique Howard, M.D., and Ramsey Daher, M.D. (collectively, "the defendants")—alleging breach of contract, breach of fiduciary duty, wrongful withdrawal, civil conspiracy, aiding and abetting breach of fiduciary duty, and tortious interference with contract/inducement of breach of contract. See Complaint ("Compl.") ¶¶ 75–128, ECF No. 1. Thereafter, on April 8, 2024, the plaintiff filed a motion for a preliminary injunction, see Plaintiff's Motion for Preliminary Injunction ("Pl.'s Mot.") at 1, ECF No. 16, and a memorandum in support thereof, see Plaintiff's Memorandum in Support of Motion for Preliminary Injunction ("Pl.'s Mem.") at 1, ECF No. 17. The plaintiff seeks a preliminary injunction prohibiting the defendants and defendant MGG Group's

> shareholders and subsidiaries, including without limitation, Friendship Heights Endoscopy ASC LLC (collectively, the "MGG Group Parties") from directly or indirectly owning or engaging in any further efforts to develop, build, license, or operate any ambulatory surgery center ("ASC") within the District of Columbia or Chevy Chase or Bethesda, Maryland, and from any other action that is contrary to their contractual obligations to [the plaintiff].

Pl.'s Mot. at 1.

On April 8, 2024, the plaintiff also filed a motion requesting an expedited hearing on its motion for a preliminary injunction within twenty-one days after the motion's filing. See Plaintiff's Request for Expedited Hearing on its Motion for Preliminary Injunction at 1, ECF No. 20. On April 11, 2024, the Court granted the plaintiff's motion for an expedited hearing and scheduled a motion hearing for April 29, 2024. See Minute ("Min.") Order (Apr. 11, 2024). However, upon further review of the parties' briefing and the relevant case authority, the Court has determined that a motion hearing is unnecessary. For the following reasons, the Court concludes that it must deny the plaintiff's motion for a preliminary injunction.

Preliminary injunctions are "extraordinary remed[ies] that should be granted only when the party seeking the relief, by a clear showing, carries the burden of persuasion." Cobell v. Norton, 391 F.3d 251, 258 (D.C. Cir. 2004). "A plaintiff seeking a preliminary injunction must establish [(1)] that [it] is likely to succeed on the merits, [(2)] that [it] is likely to suffer irreparable harm in the absence of preliminary relief, [(3)] that the balance of equities tips in [its] favor, and [(4)] that an injunction is in the public interest." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). "Historically, these factors have 'been evaluated on a sliding scale[.]'" Giri v. Nat'l Bd. of Med. Exam'rs, No. 24-cv-410 (CRC), 2024 WL 756604, at *5 (D.D.C. Feb. 23, 2024) (internal quotation marks omitted) (quoting Davis v. Pension Benefit Guar. Corp., 571 F.3d 1288, 1291 (D.C. Cir. 2009)). The District of Columbia Circuit, however, "has [recently] hinted, though not held, that Winter [v. Natural Resources Defense Council, Inc., 555 U.S. 7 (2008)] . . . establishes that 'likelihood of irreparable harm' and 'likelihood of success' are 'independent, free-standing requirement[s].'" Giri, 2024 WL 756604, at *5 (third alteration in original) (quoting Sherley v. Sebelius, 644 F.3d 388, 392–93 (D.C. Cir. 2011)). In

any event, "[r]egardless of whether the sliding scale analysis survives Winter in this Circuit, it is clear that failure to show a likelihood of irreparable harm remains, standing alone, sufficient to defeat the motion." Navajo Nation v. Azar, 292 F. Supp. 3d 508, 512 (D.D.C. 2018).

The District of Columbia Circuit "has set a high standard for irreparable injury." Chaplaincy of Full Gospel Churches v. England, 454 F.3d 290, 297 (D.C. Cir. 2006). To constitute irreparable harm, the injury alleged must be "both certain and great, actual and not theoretical, beyond remediation, and of such imminence that there is a clear and present need for equitable relief[.]" Mexichem Specialty Resins, Inc. v. Env't Prot. Agency, 787 F.3d 544, 555 (D.C. Cir. 2015) (internal quotation marks omitted). "[T]he general rule in this Circuit is 'that economic harm does not constitute irreparable injury.'" Safari Club Int'l v. Jewell, 47 F. Supp. 3d 29, 36 (D.D.C. 2014) (quoting Davis, 571 F.3d at 1295); see also Wis. Gas Co. v. Fed. Energy Regul. Comm'n, 758 F.2d 669, 674 (D.C. Cir. 1985) ("It is [ ] well settled that economic loss does not, in and of itself, constitute irreparable harm."). And, "[t]he loss of business opportunities, market share, and customer goodwill are typically considered to be economic harms." Air Transp. Ass'n of Am., Inc. v. Export-Import Bank of the U.S., 840 F. Supp. 2d 327, 335 (D.D.C. 2012); see also Mylan Pharms., Inc. v. Shalala, 81 F. Supp. 2d 30, 42 (D.D.C. 2000) (observing that "[c]ourts within the [District of Columbia] Circuit have generally been hesitant to award injunctive relief based on assertions about lost opportunities and market share").

However, "economic loss can constitute irreparable injury [ ] in limited circumstances: where 'monetary loss . . . threatens the very existence of the movant's business,'" Safari Club Int'l, 47 F. Supp. 3d at 36 (omission in original) (quoting Wis. Gas, 758 F.2d at 674), or "where the claimed economic loss is unrecoverable (e.g., when the defendant is entitled to sovereign

immunity)," Cardinal Health, Inc. v. Holder, 846 F. Supp. 2d 203, 211 (D.D.C. 2012) (citing Nat'l Mining Ass'n v. Jackson, 768 F. Supp. 2d 34, 53 (D.D.C. 2011)). In order for economic harm to constitute irreparable injury, the "[p]laintiff[] must 'adequately describe and quantify the level of harm it[] [ ] face[s].'" Air Transp. Ass'n of Am., 840 F. Supp. 2d at 336 (quoting Nat'l Ass'n of Mortg. Brokers v. Bd. of Governors of Fed. Rsrv. Sys., 773 F. Supp. 2d 151, 181 (D.D.C. 2011)).

Here, the plaintiff argues that it "will suffer immediate and irreparable harm if relief is not granted" because "[t]he MGG Group Parties' development and ownership of new competing ASCs will damage [the plaintiff's] business and patient relationships." Pl.'s Mot. at 2. Furthermore, the plaintiff asserts that "the MGG Group Parties' inevitable use of confidential and proprietary business information they have obtained from [the plaintiff] for the benefit of their competing ASCs will give the MGG Group Parties an unfair competitive advantage and cause serious economic harm to [the plaintiff]." Id. (emphasis added). The plaintiff argues that "it is impossible to repair the competitive harm and loss of customer goodwill that [the plaintiff] will experience because of the MGG Group Parties' unfair competition, making injunctive relief vital." Pl.'s Mem. at 17. However, these claimed harms are the type of harms that are typically considered to be economic in nature. See, e.g., Cmty. Oncology All. v. Becerra, No. 23-cv-2168 (CJN), 2023 WL 9692027, at *4–5 (D.D.C. Dec. 21, 2023) (concluding that "the loss of patient goodwill and the loss of provider referrals" are "best characterized as economic in character"). Additionally, although the plaintiff expresses concern with the defendants' use of its confidential and proprietary business information, see, e.g., Pl.'s Mem. at 16 ("Using [the plaintiff's] confidential and proprietary processes and procedures, the MGG Group Parties will undoubtedly divert patients from [the Endoscopy Center of Washington, D.C., L.P. (']ECW's[')] existing

K Street Center to their New Chevy Chase ASC."), the plaintiff's "objection is not to [the defendants' possession of the information] per se, but rather to [the] effect on [the plaintiff's] future revenue." Econ. Rsch. Servs., Inc. v. Resol. Econs., LLC., 140 F. Supp. 3d 47, 52 (D.D.C. 2015) (emphasis in original). Stated otherwise, the plaintiff's "true interest . . . is in preventing [the defendants] from siphoning its future profits." Id. at 52–53. Thus, "should [the plaintiff] ultimately prevail, its economic losses can be remedied with money damages, which [the plaintiff] specifically requests as relief in its [C]omplaint[,]" GEO Specialty Chems., Inc. v. Husisian, 923 F. Supp. 2d 143, 150 n.9 (D.D.C. 2013). See Compl. at 30.

Moreover, the plaintiff does not contend that the alleged economic loss would threaten the very existence of its business or that such loss is unrecoverable. See generally Pl.'s Mot.; Pl.'s Mem.; Declaration of W. Brantley Phillips, Jr. in Support of Plaintiff's Motion for Preliminary Injunction ("Phillips Decl."), ECF No. 18; Declaration of Elizabeth G. Wylie in Support of Plaintiff's Motion for Preliminary Injunction ("Wylie Decl."), No. 19; Plaintiff's Reply in Support of Motion for Preliminary Injunction ("Pl.'s Reply"), ECF No. 24. The plaintiff provides monetary figures regarding the amount of earnings the Endoscopy Center of Washington, D.C., L.P. ("ECW") generated in 2021, 2022, and 2023. See, e.g., Wylie Decl. ¶ 15 ("In 2022, [the] ECW generated $1.47 million in EBITDA (earnings before interest, taxes, depreciation and amortization)."); id. ¶ 16 ("In 2021, [the] ECW generated $1.23 million in EBITDA."); id. ¶ 21 ("[The] ECW generated $1.28 million in EBITDA in 2023."). However, the plaintiff does not provide any information regarding the overall economic health of the corporation itself—i.e., AmSurg EC Washington, Inc.—or the severity of the alleged economic loss that the corporation would suffer if the defendants are not enjoined. See generally Pl.'s Mot.; Pl.'s Mem.; Phillips Decl.; Wylie Decl.; Pl.'s Reply.

The plaintiff's conclusory assertions that "the harm to [the plaintiff] is substantial, albeit difficult to calculate precisely under the circumstances[,]" Pl.'s Mem. at 17, and that "[the plaintiff] has been and will be damaged by the wrongdoing on the part of [the d]efendants . . . in an amount not less than $5,000,000.00[,]" Compl. ¶ 65, do not provide the Court with sufficient information "as to what effect . . . th[e] purported economic harm will have on its business[,]" Sterling Com. Credit Mich., LLC v. Phoenix Indus. I, LLC, 762 F. Supp. 2d 8, 15 (D.D.C. 2011). While the plaintiff may suffer substantial economic harm, including the "los[s] [of] some [business and patient] goodwill, the [plaintiff] has not established that the result will be extreme hardship to [the plaintiff's business], or that it would threaten [the plaintiff's] very existence while this case is litigated on the merits." Cmty. Oncology All., 2023 WL 9692027, at *5 (internal quotation marks omitted); see also ConverDyn v. Moniz, 68 F. Supp. 3d 34, 48 (D.D.C. 2014) ("In general, substantial financial losses are not sufficient to merit preliminary injunctive relief unless they are of a magnitude to threaten the movant's business."). Consequently, the "plaintiff has provided no reason for this Court to depart from the established rule that 'economic harm does not constitute irreparable injury.'" Sterling Com. Credit, 762 F. Supp. 2d at 16 (quoting Davis, 571 F.3d at 1295); see also N. Air Cargo v. U.S. Postal Serv., 756 F. Supp. 2d 116, 126 (D.D.C. 2010) ("Unaided by sworn declarations from [the] plaintiffs discussing the overall impact of the projected losses on [the] plaintiffs' businesses, the Court is unable to find that the purported harm to be suffered by [the] plaintiffs is sufficiently great to warrant interim injunctive relief."); TD Int'l, LLC v. Fleischmann & Tertium Datur Int'l, LLC, 639 F. Supp. 2d 46, 49 n.3 (D.D.C. 2009) (holding that the plaintiff failed to establish irreparable harm because, even assuming the accuracy of the plaintiff's alleged economic loss, "[t]his alleged loss . . . . [wa]s never placed in the context of the financial condition of [the plaintiff's] business").

Therefore, the Court concludes that the plaintiff has not met its burden to demonstrate irreparable harm in this case. See Cobell, 391 F.3d at 258 (stating that preliminary injunctions are "extraordinary remed[ies] that should be granted only when the party seeking the relief, by a clear showing, carries the burden of persuasion"). Because the plaintiff has not demonstrated irreparable harm, the Court must deny the plaintiff's motion for a preliminary injunction. See Florida EB5 Invs., LLC v. Wolf, 443 F. Supp. 3d 7, 11 (D.D.C. 2020) ("The requirement of showing irreparable harm is an independent requirement: if a plaintiff does not demonstrate that it is likely to suffer irreparable harm in the absence of preliminary relief, the Court may deny the motion without considering the other factors." (citing CityFed Fin. Corp. v Off. of Thrift Supervision, 58 F.3d 738, 747 (D.C. Cir. 1995))).

Accordingly, it is hereby

**ORDERED** that the Plaintiff's Motion for Preliminary Injunction, ECF No. 16, is **DENIED**. It further

**ORDERED** that the motion hearing currently scheduled for April 29, 2024, is **VACATED**.

**SO ORDERED** this 26th day of April, 2024.

REGGIE B. WALTON
United States District Judge